and that is also UCI, but a different complement. So please come forward. It's 24-6435. And that's 15 minutes each side, which is about what we took on the other one. So hopefully that will, that was a better estimate of time as far as that goes. And my records indicate that, let's see, Michael Seplaw is the, this is a pro bono case also, and you are the supervising attorney here, is that correct? And the law students that we have are Meng Diao, and who will be using seven and a half minutes, and Nicholas O'Reilly, and seven and a half minutes. And then we have Mr. Davis here for the government. So, and the government here is, once again, the appellant. And so if you wish to reserve any time for rebuttal, you can tell me that aspirationally. We're ready to proceed. Good morning. Good morning. Thank you, Your Honor, for allowing me to present my oral arguments. My name is Chris Davis, and I'm here on behalf of appellants. The District Court erred with denying defendants' motion for summary judgment because they are entitled to qualified immunity, as they did not personally violate a clearly established constitutional right. Neither Edmondson nor the District Court have identified any Supreme Court or Ninth Circuit authority that defines the supposed right violated with the required high degree of specificity, so that every reasonable officer would have known, that's known, that the conduct under the specific similar circumstances of this case violates the Eighth Amendment beyond debate. Well, okay, here's what, I reviewed the video, and I'm sure that everyone here did. Everyone's looked at that as well. And honestly, I looked at it yesterday, and I cannot tell from the video exactly what happened. I can tell that the, that Mr. Edmondson was uncooperative. He wouldn't come out. They staged a situation, which was quite well orchestrated, to go in to extract him, and they talked about what they were going to do. After that, I cannot tell basically what happened. And then after that, then we also have that Mr. Edmondson has some injuries on his face. So I agree it has to be with specificity, but I do think the law is fairly specific, that when someone is restrained and controlled, you can't continue to use force on them. And that seems to, that's where I focus my issue here. And when I look at the video, I, you, we have to, I think there's one issue here that's talked about, whether we can even, whether you even can appeal on the jurisdictional issue. It would be my view that when you can look at the facts with most favorable to Mr. Edmondson, that we can review it. And if I do that here, he says he got punched after he was fully restrained, and he wasn't resisted, and he has certain injuries. I can't, I can't tell from the video that that didn't happen. Okay, Your Honor. First of all, I, they argue that a lot in their brief, that he was, that there's evidence in the record that says he was fully restrained before they. I don't know, you might win a trial. No, no, no. No, you're, okay, sorry, Your Honor. Okay, you might win a trial, and that may be true based on that. I don't know, but I can't tell from that video that that's the case. Your Honor is correct, and we're only relying on the video for three things, okay? We're relying on it for three things. One, that he created the chaos that happened. I think that's clear from the video, that he is responsible for the chaos that happened. How did that fit into the constitutional concern? Because, because that's the, that's the, that's the, you're in the, in the throes of things, and you're in the middle of chaos, right? It's difficult to tell what's going on, because it's the chaos that's going on, and so, sorry. Hold on a second. It's hard to say. We can hear you. It's hard to say. I don't hear that well, but I can really hear you. It's hard to say there was chaos when, you know, when he wouldn't come out, and he urinated on one of the other officers, and then wouldn't come out. I mean, they kind of planned their strategy, and they organized themselves. They got everybody all dressed up in their tactical gear, and, you know, tried to get him to come out, and then they went in when he wouldn't come out. Well, the thing is, is that... I mean, you know, how, you know, so the chaos, I'll grant you, you know, there was like, when they went in, it's all five of them go into the, or four of them go in to the cell, which is very small on that video. I mean, yeah, there probably was chaos there, but... Yeah, but that's... You can't tell. I mean, so I, I just have a hard time. I mean, you know, we see these cases come up in terms of disturbances within the prison, and we're not sure the, sure the prisoners may have created the situation, but that doesn't give, you know, the officers license to continue to use excessive force when they've subdued and controlled the suspect. You know, and Your Honor, if he was fully restrained, if there was evidence in the record that he was fully restrained and fully controlled before the things, but there is no evidence in the record of that. Wait, wait, wait, wait. Did, what did he say? Did not he say that they put punches on him after he was fully restrained? No, Your Honor. He doesn't say that? I do not see anywhere on the record. They argue that in their brief over and over again, and I pointed out in my reply brief that I'm going, I'm reading the record, and I'm looking at the, at the, at the verified complaint that there, which is, which is using as the affidavit, and what he says is, is he says, okay, they come into the cell, right, and then they, sorry, I'm very. We're not in front of a jury, and we're not very far from you, so you're yelling. He's coming, he's coming into the cell, and he's, when they come into the cell, he pushes off on the shield, which the officers have to believe is a combative act, that he's doing this, he's combating them, they're there. Then he says, after a while, he is non-combative. That's what he says, after a while, I was non-combative, and they were still punching me after I was non-combative. Okay, so that's exactly what I said. But that's not, but that's not what, but that's not the only fact that it is. He is still resisting, trying to resist being put into restraints, and as long as he's still resisting being, trying to be put into restraints, the officers can employ force to put those restraints on him. You have one, you only have one level of voice here. I know, I'm sorry, Your Honor. Okay, how many times do I have to say that? I mean, I think they can hear you in the other  I go, I go, in this courtroom, I agree. I'm much closer to Your Honors than I am when I go to San Francisco. The bench is further away, so it doesn't happen. And I apologize again, Your Honor, sorry. But that's, that's the facts here. The facts here. But the problem is, as Judge Callahan pointed out at the beginning, this is on, you know, this is on summary judgment. You've got an interlocutory appeal, and in these circumstances where the district court found that there were disputed issues of fact on the issue of, on the first prong of the qualified immunity analysis, we really can't second guess that because we don't have jurisdiction to do that. It's outside our jurisdiction. We have to accept that the jury, that the district court found that there was a tribal issue of fact. And then we move, then we move into whether the law was clearly established, and I don't see how you get beyond some of the, you know, even the Supreme Court's, what was it, Supreme Court's decision in Hudson. And I respectfully disagree with you, Your Honor. Okay. That's, that's, that's where the jurisdiction lies. Because what you have to determine is, whether or not there was evidence in the record to support. You have to show that there were material facts in the record. We can't, the district court found that there were material factual disputes. Right. But you can review that, Your Honor. You can review whether we... No, I don't think we can. Yeah, I'm not going to... But I think what makes it reviewable is, what gives us jurisdiction is then we look at it from the perspective of, give all inferences to the, the non-moving party. And if, based on those, if everything that he said, there still is no tribal issue, then we can, we can reverse. But we can't go back and, we don't weigh the evidence on that point. You're, you're, you're, you're exactly right. And I'm not asking you to re-weigh the evidence. I'm asking you to re-weigh the evidence. You're correct on that. Well, I, I, I say you're correct that, that you can't re-weigh the evidence. As far as that, you can't re-weigh if there is evidence, whether or not, when there's evidence in the record, you can't say, well, we're going to re-weigh this and say that we're going to give more weight to this than something else. Unless, except for some extreme circumstances such as Scott. So you would agree that what we re-weigh, what we look at to have jurisdiction is give all inferences to the non-moving party, look at those facts, and if, and we can, we still could reverse if we feel that there isn't a tribal issue looking at giving him all inferences. That's, that's correct, Your Honor. Okay. That's fully, that's fully, that's fully on board. And that's what you can do. And the thing is, though, what I'm, what I'm trying to say is, is that, say for example, the, you know, for example, I think the Scott case is the, the premier case on this, right? The Scott case was outrageous, and done in this, and the Supreme Court says, well, the district court, there's no evidence for that, for that to happen. And so the Supreme Court said in Scott, I, we don't have to listen to the district court, their findings about that particular case, because there was no evidence that any reasonable jury could believe. There has to be evidence. Let's take you back to, if we give all inferences to Mr. Edmondson, what did Mr. Edmondson, what was the evidence if we give all inferences to what he says? Okay. He said, he basically says that he wasn't struggling after a point, and that they continued. No, sorry. No, he didn't say that I'm no longer struggling. He said I'm no longer combative. I think that's a difference. There's a difference between being combative, right, hitting, combative I say is hitting, and there's a difference between resisting imposition of restraints. And that's the difference here. And that's, and I want to go with that, because that's, Hughes is I guess the best case we got for either way on either of those cases. In Hughes, the eighth amendment violation was only found because the evidence of record established that the Kenan officer repeatedly punched an escapee, and the police officer contained, continued to hit the escapee after the escapee was fully subdued, and his hand cuffed behind his back. That's, that's Hughes, right, on that half. But, Hughes also found that the officers involved in capturing and subduing the escapee, however, did not violate the eighth amendment, because these officers were not canine handlers, and there was no evidence that these officers punched the escapee after he was fully restrained, and handcuffed, subdued and handcuffed. So you have the two sides of that in Hughes. He wasn't fully restrained in this case. It was not until he was wheeled out in the, by No, he's, he's, he's, he's restrained in the video. Okay. It's not, it's, it's, where he's restrained is where the, the, the officer, say, you hear in the video, they say he's, he's now fully restrained. And that's where he is restrained. I don't know, I don't know you could say that, you know, it's established as a fact that he was restrained at that time, because you can't see in the video where he's restrained. Does he allege that he was hit after officers said he was fully restrained? No, he does not, Your Honor. He does not say that. He does not say he, he, the only time he says, he says, the only time he says he's hit is after he is no longer combative. But he does not say, I, I fully was submitting, and they had, they had my arms, and they had me there, and you've got to have it also. This is a, this is a My, my second question though is, the injuries to his face was more pronounced than I expected at first. So what, what's the explanation for that? Well, well, listen to the deal, okay? I've seen now lots of these videos. Yeah. Where they're doing it. And when you, when you see it, and they're having him, and they're pushing him into the, because they are, they're pushing him down into the ground, which includes keeping his head down, you know, so his head can't struggle. And, and unfortunately, from my experience, what's, that's happening is, is his head is rubbing against the concrete of the floor. I think the district court thought he was being punched in the head, but there's no allegation. But the thing is, if he's being punched in the head at, right, you look at the video, and you get the objective medical evidence, right? He's got a small cut. They're handling by bandages. He's, he, he doesn't need to request additional medical care after the fact. He says, he, in fact, so he doesn't have enough injuries. He doesn't have to go to medical. He gets to go back to his cell after they've searched his cell. But the thing is, is that you've got to remember, they, the officers, when they're going into this, he's propelled urine on somebody. He is somebody that's willing to assault officers. He could have a weapon handled, hidden in his cell. When they're going in, they do not know what they're going to face. You know, you talk about the Soto case. Read that Soto case and talk about that and say, hey, you know, that's exactly what's going on here. That these officers have to go in thinking that this guy is going to do something dangerous to them. And even though they're in full cert gear, officers get hurt when they're doing this. So, let me ask you this. I want to go back to this whole business about whether we have, the extent of our jurisdiction. So, you're not, are you arguing that the district court erred in finding material tribal issues of fact? And, and, and, if, I, I don't even, I don't even. Just answer the question. Is that your argument? I, I, Your Honor, I don't specifically recollect whether the district court actually found that he was hit after his assault. Look, we're on summary judgment. The district court doesn't find facts on summary judgment. In order to grant summary judgment, as you may well recall, you either find there are no material tribal issues of fact, or you could, and judges don't like to do it, they can say, well, I'll need, there are some disputed facts, but no juror could ever agree with what the. Well, we have. I want to, but I want to know, are you, is it your argument that the district court erred in finding that there were no material tribal issues of fact? Or that there were, I'm sorry, that there were tribal issues. Are you saying, do you mean that some jury could find, that some jury could find an eighth amendment violation? Yes. Yeah, I'm disputing the district court. Okay. Do you want to reserve any time for rebuttal? Sir, Your Honor, I would reserve as much time as Your Honor would be willing to give you. I was going to say six minutes at the beginning, but I wasn't, that was just aspirational. Oh, no, that's not happening. I know. So, that's not happening. So, right now, I'm giving you what you have here, but let's see how long we spend with the other side. Do, do either of my colleagues have any additional questions? No. Okay. All right. All right. Good morning. Good morning, Your Honors. May it please the court. Okay, I hate to say that after hearing yelling, could you raise your voice a little? Sorry. I told the other side not to yell. Can you talk a little louder? Yes, Your Honor. Thank you. Good morning. Say your name. Good morning, Your Honors. May it please the court. My name is Meng Diao, and I am a certified law student under the supervision of Michael Sepplow. I will be addressing the excessive force problem, and my co-counsel, Nicholas O'Reilly, will be addressing the clearly established problem. This court should affirm because there are genuine disputes of material fact. Mr. Emerson's verified complaint signed under the penalty of perjury state that he was beaten while in handcuffs. That is in the article. What is exactly your client alleged in terms of, if we give all inferences to what your client has alleged, what are the facts here? We assume that they're true. Right, Your Honor. What did he say? He said, one of the handcuffs on the ground while after being noncombative, cert held me down while several cert officers flogged me. That's ER 214. And additionally, that in ER 216, cert clear started striking me in my eyes several times from behind while laying on the ground, ER 216. Is that from his deposition? It's from his verified complaint under the penalty of perjury. Unfortunately, we don't have a deposition that's taken by the person in this case. And when he's alleging he's noncombative, plus already left hand behind the back, and cert written holding right wrist by lower hip. And these, drawing all reasonable inferences in his favor... What does flogged mean in this context? Beat, Your Honor. And in the video, even though it's unclear, but you can see the swinging movement, shoulder, and it means beat, Your Honor, in this case. And because we're drawing all reasonable inferences in his favor, that he was in handcuffs on the ground while being beaten. And this is an excessive force under the Eighth Amendment, under the Hugh standard. And additionally, there are other facts in his verified complaint as well, that the Lieutenant Rigney, after the incident, told him, we enjoyed that. Did you learn anything? We enjoyed that what? We enjoyed that. Did you learn anything? And that is clearly evidence of a sadistic and malicious intent. And as the other... Well, does that really go to whether he was hit after he was restrained? Sorry, Your Honor? I mean, if they did everything right, and that basically... I mean, your client, obviously, put urine on people. He wouldn't come out of his cell. I mean, he could have gone easily on all of this, and he didn't. So he started the situation. So if they go in like that, I don't think you get excessive force just by virtue of how they decide to go in and extract them, because they don't need to put themselves in that sort of danger. Yes, Your Honor. So did you enjoy that? Could mean like, hey, we're going to come in and put you down like this as far as that goes. But what evidence is that? How can we infer from that that we beat you up after we handcuffed you? Your Honor, we are drawing reasonable inferences in favor of Mr. Edmiston. And in this case, we're not disputing that. It's the initial refusal of order, and then the officers choosing reasonable means to extract him out of the cell. We're also saying that once he's handcuffed, once he's restrained, no more force should be necessary to... It should not be an ongoing strike on Mr. Edmiston's eyes behind his back. And yes, there are multiple interpretations of Lt. Rigney's statement, whether that is specifically referring to the act to extract him in the beginning. Well, your friend on the other side seems to say he never said that. He just said he wasn't combative. Are you saying that there's more specifically what he said, that he was actually restrained and then he was flogged? Does he say that? Or does he just say, I wasn't combative? I'm hearing a... It doesn't sound the same what you're saying in the complaint and what your friend on the other side is saying. So one of you is right and one of you is wrong. Your Honor, to directly answer the question, in his verified complaint, he does not specifically state it. I was fully restrained when they beat me. But he clearly says once he handcuffs on the ground while after being non-combative. Once he handcuffs, that is plural form. That implies that he might be already both hands being handcuffed on the back when the officers beat him. But when you look at the video, it's still chaotic even after they have him in handcuffs, right? I mean, and he says that this force was used, whatever force was used was only five seconds after his handcuffs. Your Honor, that in his verified complaint, that five seconds, we believe it's him citing a case. That is not what he's actually saying. What? Oh. Because there is a case citation after the five seconds. The post? Yes. And then there is a, seems like a number attached to it. So I do not believe Mr. How come there was no deposition or anything? Your Honor, the prison just did not take any and then they had opportunity to take the deposition to clarify the record. But this is the record that we got on summary judgment stage. He was pro se. He is pro se. So everything he said under, in his verified complaint. Well, I mean, even if you're, even if it's not five, I mean, it's pretty short. I mean, the whole interaction that lasted, what, a minute and a half total? Yes, Your Honor. So, I mean, the point being is that even if he was handcuffed, it was very chaotic. And so not every, every officer would have understood that he was fully like subdued and restrained and it stopped pretty quickly after that. Your Honor, as you see in the video, it's a really tiny cell and there are multiple officers on top of him.  So when, when somebody's hands are behind their back and according to his verified complaint, once he handcuffs, I believe multiple officers will be able to realize that this inmate is already restrained. That should not work for them. But you would, from seeing the video, it was pretty chaotic. There's like five officers and him in that one tiny cell. Yes, Your Honor. And we agree that any flogging that happened, like ended pretty quickly after he was handcuffed. Ended pretty quickly, but still it was while he was in handcuffs. And the measurement of excessive force should not be how long the entire cell extraction took place, which is one minute and 20 minutes. It should be measured out post- Well, I guess the argument that I would make there, and you're, you're not, it's, that's why officers might win at trial, but why they don't win at summary judgment. Yes, Your Honor. But that's because they still could win at trial. Yes, Your Honor. Because if a jury found that, I mean, if they, if the officers don't think he's restrained, but he thinks he's restrained, the jury is going to have to decide really what was going on there, what do we believe happened. Right. And like what Judge Bumate said, a jury could look at it and say, hey, you know, yeah, that's all, it's sort of like on the last case where we are in our offices and just we're deciding when someone's restrained or not. Right. And your client's in the cell and not cooperating and the officers are in there trying to get them into submission that a jury could say, hey, you brought it on yourself and you could lose, right? Yes, Your Honor. And this is why we want this court to affirm the district court judgment and ask all factual disputes to be resolved at a jury trial. And thank you, Your Honor. I saw my time is up. Let me just see if anyone, does anyone have, no, no additional questions. Thank you for your argument. Thank you, Your Honor. Good morning.  May it please the court, Nick O'Reilly on behalf of OPELI, Justin Edmison. The district court got it right. As of June 29, 2022, the law was clearly established that beating a compliant inmate post-restraint asking whether the inmate learned a lesson that the officers enjoyed the beating violates clearly established law. Well, how could the district court got it right when the district court didn't even mention any clearly established law? What was the clearly established law that the district court mentioned? Well, the analysis of the district court might be a bit threadbare. Non-existent, in fact. Because, I mean, the district court focused on the dispute of fact, which is proper, but under, you understand, under clearly established law that wouldn't we take all facts in favor of Edmison and then decide whether or not that violates clearly established law, correct? Yes, correct. And the district court did not do that. Yes, but a threadbare analysis does not mean that the law was not itself clearly established. True, yeah. But, I mean, the district court did not mention which law established these facts, right? Correct. They did not clearly state it in their writing. But over three decades ago, the Supreme Court themselves, in Hudson v. McMillian, did say the officers were not entitled to qualified immunity. And the conduct there was the inmate was handcuffed and shackled, but he was punched and kicked from behind, causing bruises and facial swelling. They remanded it back to the Fifth Circuit, and the Fifth Circuit said, in light of the Supreme Court's teachings, that we hold that the force used against Hudson was one, and applied maliciously and sadistically for the very purpose of causing harm. That standard is consistent with what we see in the Ninth Circuit. And in Hughes v. Rodriguez's interpretation of Hudson, they said, in April of 2022, months before the incident, that it is clearly established law that beating a handcuffed convict violates the Eighth Amendment at 1223. And I also just want to highlight the ER citations here, that at ER 214, Mr. Emerson himself says, once in handcuffs, on the ground, a while after being noncombative, cert officers held me down while several officers flogged me. And flogged, meaning beat. It is not that he was noncombative and then struck while he was trying to be restrained. He says, definitively here, that he was in handcuffs, he was noncombative. But you could be, I don't know what the facts are. You could be in handcuffs, but then your feet, you're kicking people. So, that is, you know, what do we do with something like that? I mean, just because someone, if someone is restrained, you know, it's not only, I mean, handcuffs are one way to restrain people. But someone could, what, like, let's say they're in handcuffs, but then they're biting people. Do you have to let people bite you just because you're in handcuffs? Well, so, no, you do not have to allow someone to bite you while in handcuffs. But that's not the issue here. Mr. Emerson says that he was face down on the ground and being pushed by five officers. So, he wasn't beating. And here, I just want to point out, this is once in handcuffs. It's plural. And the insinuation there is that not only his hands are handcuffed, but his feet are also handcuffed, or at least restrained to some degree. Does he say that? Is that, does he get that inference? At this stage, we get all facts and reasonable inferences. Well, what in the record tells us that his feet and hands were restrained? What do we look at to see that? I would cite to ER 214 where he says once in handcuffs, not just handcuff singular. There, the inference can be that, well, he had hand restraints and leg restraints on him at the same time. That's true. So, that seems like a big inference. Okay. And then, I also want... Can you, is there any case that shows that where, you know, you agree that whatever flogging happened, happened within seconds after he was handcuffed, right? And it ended very quickly. I would say it's unclear given the video. Well, he mentions the five seconds. You're claiming that it's, he's saying to a case, but I mean, I think he's suggesting that that's within five seconds, right? What's the relevance of him mentioning five seconds in his complaint? I would not be able to know it. And given that, sorry, the other side had the opportunity for a deposition, it could have been clarified, but they chose to not clarify that. So, at this point... But, I mean, we could take some inferences that he's suggesting that the beating ended after a very short amount of time after he was handcuffed, correct? You could infer that. Well, on this record, that's what he said, and we give him all the inferences. So, that would be what we would... It would be... He still says it's after, but he says it's a short time. Correct. Yeah, and so what I'm trying to get at is what's clearly established law, because if you look at the video, it's very chaotic what's happening in there, and, you know, not every officer... There's five, I think, five officers that go in there in a tight space. Not every officer is going to understand what, you know, when he's fully restrained or handcuffed, right? So, is there a clearly established law saying that if some officer... You know, if the person's handcuffed, even if other officers might be unclear if he's handcuffed, that still violates the Eighth Amendment? Well, so to that point, whether the officers were aware of the punching or restraints and could intervene is a question of fact and not reviewable at this stage. Well, I'm assuming... Okay, go ahead. Sorry. To the point, the standing proposition is that beating a handcuffed convict violates the Eighth Amendment. They don't mention whether they need to be aware or what amount of time they need to be aware of or whether they need to be the one that cuffed the inmate themselves. What does your client say about how he got the injuries to his face? So, he does not say directly that it was this punch that led to the injuries to my face. However, ER 221 to 222, he says, while I was in handcuffs again, he started to strike me in the eyes, referring to one of the officers. So, the inference that can be drawn there is he was struck in the eyes, and that led to the injuries on his face. And... Sorry. Okay. And then, I also just wanted to point out that Hord v. Hartman was relatively clear on the point, and so was Hughes, about the bright-line rule between pre-restraint and post-restraint, which is even where a legitimate policy permits force, when that force becomes unnecessary or for the sole purpose of punishment, that violates clearly established law. The officers were right to go into the cell in the first place. However, once they restrain Mr. Emiston, once he's compliant, there's no more reason to be punching him or hitting him for any reason whatsoever. And the district court said there are genuine material issues of fact on that issue, correct? Related to what issue exactly? What you just said. Sorry. That he was struck pre- or post-restraint? Yeah. I mean, the district court basically said, you know, there are factual disputes really about what happened. Yes. Right? Yes. Throughout. Right. I think we disagreed on just about everything in the briefs. The only thing was that they were right to extract him in the first place, but after that, Mr. Emiston says that he was struck. And because of that, you don't get – the officers just don't get qualified immunity. And this really isn't – you know, at that level, the district court's concern – we don't know because, as Judge Bumate said, the district court didn't really say anything. But, you know, it could be that the district court felt that the whole issue of qualified immunity was just embedded in there and he couldn't make a decision on qualified immunity until the facts were clearly established. Because although our case law in the Supreme Court tells us you should decide qualified immunity as soon as possible, reasonably possible, that doesn't preclude the district court from waiting until the record is either more fully developed or even at trial when the facts are resolved by the jury or by the trier of fact. And at that point, the district court can evaluate whether qualified immunity is available. Is that right? Yes, that's correct. Oh, you shouldn't – never mind. Sorry. Yeah, one question. So you're relying on Hughes saying beating post-handcuffed violates constitutional rights. Yes. In Hughes, they were beating him for two minutes, if not more, after the handcuffs were put on. Here, we're talking less than – sounds like five seconds. So how does Hughes establish clearly – create clearly established law? Hughes creates a very clear rule of pre-handcuffed beating and post-handcuffed beating. They don't say that the beating has to be before – Well, you can't ignore the facts of it. He was being beaten for two minutes after he was handcuffed. That's a very different proposition than five seconds after he was handcuffed in a very chaotic situation. Yes, but the statement of law in that case was it is clearly established law that beating a handcuffed inmate – sorry, beating a handcuffed convict violates the Eighth Amendment. That was the entire sentence. It doesn't say, in this case, two minutes qualifies it, one minute would disqualify it, or how long it permits it. It's just once the inmate is handcuffed, any beating after the fact violates clearly established law. All right, thank you for your argument. Thank you. All right, you have a minute for rebuttal. One of the problems with this case also is that even if you assume – okay, let's assume that you could construe the fact saying that he was handcuffed before some officer beat him. The problem also in this case is that he doesn't identify which officer did that. Only officers can only be held liable for their own constitutional violations. You can't hold an officer liable because some other officer punished him accordingly without evidence in the record that any particular officer punched him after the fact. You can't hold the other officers liable. That's the Hughes case. The Hughes case, you actually had the inmate actually say, this particular officer punched me, and they said, okay, well, that's a violation of clearly established law. He didn't say those facts with the other officers that were there, and so therefore Hughes says that the other officers, officers where there's no evidence that they punched him, are entitled to qualified immunity. And, Your Honors, you have to remember that he has the burden of putting forth evidence, establishing those facts. You can't just speculate and say, hey, well, you know what, and in fact we have cases over cases that say you just can't lump officers together and say, hey, somebody got punched and therefore we can lump them all together and you can therefore find a violation. Courts have repeatedly said that you cannot do that. You cannot lump them together. And just the last thing I want to talk about is the Zorn case. If you look at the Zorn case that the Supreme Court recently established, they go through and they talk about this thing about, you know, this arm restraint and the passiveness and things like that, and that looks like a very specific holding, right? And the Supreme Court says, he doesn't say that's not a specific holding. That's a general holding, they say. And that's what we have in this case. The only cases they cite are cases that have general holdings, and you have to have a case that's the Ninth Circuit case on point, a Supreme Court case on point, or a consensus of authority from the other circuits. One circuit court case in another circuit does not quite clearly establish for this circuit. So in your view, the Supreme Court's decision in Hudson is just, you know, kind of a statement. Hudson does not because Hudson doesn't establish anything. The Supreme Court in Hudson did not establish anything. Okay. Okay, thank you, Your Honor. All right, thank you both for your argument. This matter will stand submitted.
judges: PAEZ, CALLAHAN, BUMATAY